# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 14, 2012 Session

## W. STANFORD BLALOCK v. PRESTON LAW GROUP, P.C., ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 09C175      James G. Martin, III, Judge**

---

**No. M2011-00351-COA-R3-CV - Filed September 28, 2012**

---

A plastic surgeon entered into a five year lease on office space, and defaulted on the lease after the first month. The landlord's attorney filed separate lawsuits in general sessions court for breach of the lease contracts against the lessee, who had personally guaranteed the lease, and against the lessee's personal corporation. The landlord obtained duplicate judgments for unpaid rent as well as for attorney fees. The general sessions judge informed the landlord that he was only entitled to collect one judgment. The lessee appealed to the circuit court, but paid the general sessions judgment in full while the circuit court action was still pending. The landlord's attorney then filed a "partial satisfaction of judgment" and another complaint for attorney fees in general sessions court, followed by another complaint in circuit court, alleging that additional rents had accrued while the litigation continued. The lessee responded by filing a complaint for abuse of process against the landlord's attorney, alleging that the attorney filed meritless complaints in order to drive up the fees he could collect. The landlord's attorney filed a motion for summary judgment on the ground that the statute of limitations for abuse of process had passed, and that in any case no abuse of process could be shown. The trial court granted the motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Robert L. Delaney, Nashville, Tennessee, for the appellant, W. Stanford Blalock.

Winston S. Evans, Nashville, Tennessee, for the appellees, Preston Law Group, P.C. and G. Kline Preston, IV.

**OPINION**

## I.  A BREACH OF A LEASE CONTRACT

This case grew out of an admitted breach of a lease contract.  On March 3, 2005, Plastic Surgery of Nashville P.C. ("PSN") owned by Dr. W. Sanford Blalock ("Dr. Blalock") entered into a five year commercial lease on a 958 square foot office suite in Belle Meade Office Park ("Landlord").  The base rent was $1,876 per month in the first year, rising to $2,035 by year five.  The lease terms also included buildout costs of $20,000.  Dr. Blalock signed the lease on behalf of PSN and also in his personal capacity as guarantor of PSN's obligations.  The scheduled  commencement date of the lease was May 1, 2005.

Dr. Blalock paid the rent on the lease for the month of May, but he never moved in because an unexpected opportunity arose to extend a subleasing arrangement he had with another doctor.  Dr. Blalock entered into negotiations with Landlord to sublease or to assign his lease to another party, either of which was permitted under the lease terms, but only with the written permission of Landlord.  These negotiations were unsuccessful, for reasons that the parties dispute.  In any case, no more rent was paid, and Landlord declared PSN and Dr. Blalock to be in default on the lease.

On August 26, 2005, BOP, LLC, acting through its attorneys, G. Kline Preston, IV and his Preston Law Group ("Preston"), brought a complaint in the General Sessions Court of Davidson County for breach of contract and failure to pay rent against Dr. Blalock as the guarantor of the lease.  The complaint asked for unpaid rent, buildout costs and attorney fees. Judgment by default was rendered for Landlord on September 9, 2005 in the amount of $39,767.  $9,158 of that amount was for attorney fees.[1]

On October 24, 2005, Preston brought a second complaint in the General Sessions Court of Davidson County on behalf of Landlord, asserting the same claims for the same damages, but naming PSN as the defendant. Judgment by default was rendered for Landlord once again, on November 7, 2005.  The total judgment was $36,663.  As in the first case, $9,158 of that amount was for attorney fees. Preston acknowledged that the general sessions judge announced in open court that Landlord was entitled to collect only one judgment against Dr. Blalock and PSN under the terms of the lease.

---

[1]The lease included a provision stating that "[i]f Landlord or Tenant brings an action to enforce the terms hereof or declare rights hereunder, the prevailing party in any such action, or appeal thereon, shall be entitled to its reasonable attorneys' fees and court costs to be paid by the losing party . . . ."

PSN timely perfected an appeal of the judgment against it to the Circuit Court of Davidson County. On December 8, 2005, Landlord filed a "first amended complaint" in the Circuit Court, naming both PSN and Dr. Blalock as defendants. In addition to the breach of contract claim, the complaint added a claim against Dr. Blalock for fraudulent conveyance, and asked the court to pierce the corporate veil of PSN.

On June 2, 2006, Dr. Blalock paid $42,048 to satisfy the general sessions judgment against him, a sum which included attorney fees and post-judgment interest. Shortly thereafter, Landlord's attorney filed a document titled "partial satisfaction of judgment" and a third complaint in the general sessions court for breach of contract, asking for $14,999 in additional attorney fees. On July 17, 2006, the general sessions court held that Dr. Blalock had fully satisfied the judgment against him.

After paying off the general sessions judgment, Dr. Blalock filed an amended answer to Landlord's complaint in circuit court which asserted several defenses. These included res judicata based on satisfaction of judgment and that Landlord had failed to mitigate its damages by making reasonable attempts to lease the vacant office space. Dr. Blalock also alleged that he had given Landlord the names of two other tenants who were ready and willing to assume PSN's lease, but that Landlord took no action. Dr. Blalock's answer also included a counterclaim against Landlord for abuse of process.

On October 13, 2006, Landlord filed a notice of voluntary dismissal without prejudice of its circuit court complaint. But four days later, on October 17, 2006, Landlord filed another circuit court complaint against the same defendants based on the same breach of contract, but including a claim for additional rents that had allegedly become due since the judgment in general sessions, as well for additional attorney fees. For his part, Dr. Blalock contended that no additional rent was due because Landlord failed to mitigate its damages by renting out the space to another tenant.

## II. A CLAIM FOR ABUSE OF PROCESS

While Landlord's second complaint against PSN and Dr. Blalock was still pending, Dr. Blalock filed a complaint against Preston and his law group for abuse of process. Dr. Blalock's complaint, filed on January 20, 2009, recited acts that it asserted amount to an "unlawful pattern of conduct constituting abuse of process," These included Preston's filing of a claim against the guarantor before filing a claim against the principal, its filing of a "partial satisfaction of judgment" when the judgment was fully satisfied, giving false and misleading testimony at deposition as to the history of the leasehold after PSN's breach, and filing a multiplicity of claims in order to drive up the amount of attorney fees Preston could collect. Dr. Blalock asked the court to award him compensatory and punitive damages.

Preston filed a motion to dismiss Dr. Blalock's complaint on the basis of the expiration of the statute of limitations for abuse of process and failure to state a claim. Dr. Blalock filed a motion and memorandum in opposition to Preston's motion, together with court documents from the underlying general sessions and circuit court cases, the deposition of Andrew Hirt, Landlord's financial manager, and the deposition of another medical tenant in the office park who had expressed an interest in assuming Dr. Blalock's lease. G. Kline Preston filed an affidavit summarizing his role in the underlying case and asserting that since the determination that Dr. Blalock had satisfied the judgment against him, additional rents and attorney fees had continued to accrue under the lease "until it expired on April 30, 2010." Because material outside the pleadings was submitted for the court's consideration, the motion to dismiss was treated as a motion for summary judgment.

The case was assigned to Judge Martin of the Twenty-First Judicial District, sitting by interchange.[2] He conducted a hearing on January 3, 2011, and he entered a final order on January 31, granting summary judgment to Preston. The court ruled that the allegations against Preston "did not rise to the level of stating a cause of action for abuse of process." The court further held that the statute of limitations on claims for abuse of process was one year, and that "to the extent the record might establish an abuse of process, Dr. Blalock's claim for abuse of process is barred by the one year statute of limitations." This appeal followed.

### III. THE STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Id.* Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763. Those requirements are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

In this case, there are no disputed facts that are material to the decision on summary judgment. The issue is whether Dr. Blalock's claim must be dismissed, as a matter of law,

---

[2]The record shows that two Davidson County Circuit Court judges recused themselves from hearing the case against Preston because of conflicts of interest, and that all the other Davidson County Circuit Court judges were precluded from hearing the case because of potential conflicts.

because it was not filed within the applicable statute of limitations. We are called upon to interpret or apply that statute. Statutory construction is a question of law that is likewise reviewable *de novo* without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). Specifically, review of the trial court's interpretation of a statute of limitations is a question of law, and our review is *de novo*, without a presumption of correctness. *Fahrner v. SW Manufacturing, Inc.*, 48 S.W.3d 141, 144 (Tenn. 2001).

## IV. ABUSE OF PROCESS

To state a claim for abuse of process in Tennessee, as in a majority of other jurisdictions, two elements must be alleged: (1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge. *Givens v. Millikin*, 75 S.W.3d 383, 400 (Tenn. 2002); *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsberg, P.A. et al,* 986 S.W.2d 550, 555 (Tenn. 1999); *Priest v. Union Agency et al,* 125 S.W.2d, 140, 143 (Tenn. 1939); 1 AM.JUR.2d *Abuse of Process* § 5 (1994). Dr. Blalock has alleged that Preston's ulterior motive was to drive up the attorney fees he could collect by prolonging the litigation against him. The remaining question then, is whether the allegations against Preston establish that he used process in an improper way during the relevant time period.

Process has been defined broadly as "any means used by court to acquire or exercise its jurisdiction over a person or over specific property." Black's Law Dictionary (5th Ed. 1979). This court has ruled, however, that the mere filing of a motion or document by a party is not automatically considered process within the context of a claim for abuse of process, *Rentea v. Rose*, M2006-02076-COA-R3-CV, 2008 WL 1850911 at *4 (Tenn. Ct. App. Apr. 25, 2008) (rule 11 perm. app. denied Dec. 22, 2008). Mere initiation of a lawsuit, even if accompanied by a malicious ulterior motive, is not an abuse of process. *Bell ex rel. Snyder v. Icard, Merrill, et al*, 986 S.W.2d at 555.

Rather, a claim for abuse of process "normally rests on some writ, order, or command of the court in the course of a judicial proceeding." *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.*, 385 F.Supp. 17, 21 (E.D.Tenn. 1972). Such a claim, therefore, refers to times when the authority of the court is used for some improper purpose. *Rentea v. Rose*, 2008 WL 1850911 at *4. "The gist of the tort of abuse of process is the misuse of the court's power." 1 AM.JUR.2d § 5 (1994). Many kinds of process can lend themselves to misuse, including attachment, execution, garnishment, sequestration proceedings, arrest of the person and criminal prosecution. Prosser and Keeton on Torts (5th Ed. 1984), Ch. 21, *Abuse of Process,* § 121.

Further, the basis for a claim of abuse of process "is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish." *Givens v. Millikin*, 75 S.W.3d at 400 (quoting *Bell ex rel. Snyder v. Icard, et al*, 986 S.W.2d at 555). Thus, abuse of process lies "for the improper use of process *after* it has been issued, not for maliciously causing process to issue." *Bell ex rel. Snyder v. Icard, et al*, 986 S.W.2d at 555 (emphasis in original).

Dr. Blalock alleges that Preston committed abuse of process by obtaining two separate judgments in general session court for the same damages, by filing a "partial satisfaction of judgment" after judgment was fully satisfied, by filing a third suit in general sessions, and by filing additional claims in circuit court for past due rents and attorney fees.[3] He also alleged that Preston had Dr. Blalock's car wrongfully seized and impounded before he paid the general sessions judgment, causing Dr. Blalock to incur charges from the Davidson County Sheriff, rental car charges, and other expenses.

All those incidents occurred in 2005 and 2006. Dr. Blalock filed his complaint for abuse of process on January 8, 2009. Therefore, the length of the correct statute of limitations and its application are determinative of this appeal.

## V. THE STATUTE OF LIMITATIONS

Dr. Blalock argues that a claim for abuse of process is an "action for injury to property" and, therefore, falls under the three year statute of limitations found at Tenn. Code Ann. § 28-3-105. On the other hand, Preston argues that a claim for abuse of process is a "personal tort action," and is therefore subject to the one year statute of limitations found at Tenn. Code Ann. § 28-3-104.

When determining which of several possible statutes of limitations applies to a particular claim, the court must look to the gravamen of the complaint. *Pera v. Kroger*, 674 S.W.2d 715, 719 (Tenn. 1984); *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996). "Gravamen" is defined in Black's Law Dictionary (5th Ed. 1979) as "the material part of a grievance, indictment, charge, etc. The burden or gist of a charge; the

---

[3]Preston also rejects Dr. Blalock's contention that Landlord's claim is for money already paid, asserting instead that it is for additional rents that became due after the satisfaction of his earlier claim in general sessions court. He points to the affidavit he filed in the trial court to support his motion for summary judgment, in which he testified that he filed his second amended complaint in pursuit of those additional rents and attorney fees. He notes that Dr. Blalock has not filed any countervailing affidavit to create a genuine issue of material fact.

grievance or injury specially complained of."

There is no statute in Tennessee that specifically addresses the statute of limitations applicable to a claim for abuse of process and no decisional law that is directly on point. So we must look to the limitations periods that apply to similar types of claims and the injuries associated with them.

Preston argues that a claim for abuse of process is a "personal tort action," and is therefore subject to the one year statute of limitations found at Tenn. Code Ann. § 28-3-104. That statute applies to a number of different kinds of claims, including "(1) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, breach of marriage promise; (2) Actions and suits against attorneys or licensed public accountants or certified public accountants for malpractice, whether the actions are grounded or based in contract or tort; . . . ." Tenn. Code Ann. § 28-3-104(a).

Dr. Blalock argues that a claim for abuse of process is an action for injury to property, and therefore falls under the three year statute of limitations found at Tenn. Code Ann. § 28-3-105 for "actions for injuries to personal or real property." He contends that the gravamen of his abuse of process claim is the monetary loss imposed by the burden of having to respond to numerous filings and claims initiated by the defendant. To support his theory, he recites in great detail the proceedings arising from the numerous complaints filed by Preston and states that he has suffered heavy financial losses as a result, quite apart from the payment he made to satisfy Landlord's legitimate claims. He disputes Preston's claim that his injuries are personal, pointing out that "personal injuries" is most commonly held to mean physical injuries to the body.

There is ample authority, however, for the proposition that the term "injuries to the person" carries a more expansive meaning than Dr. Blalock suggests. In *Brown v. Dunstan,* 409 S.W.2d 365 (Tenn. 1966) our Supreme Court was faced with the question of the correct statute of limitations to apply to a claim that the defendants had conspired to defraud and discredit the plaintiff and oust him from his position as a bank officer. Even though the plaintiff's complaint alleged substantial economic losses, the court ruled that the one year limitations period for injuries to the person applied, citing the damages done to the plaintiff's reputation as a businessman, father and respected member of society. *Brown v. Dunstan,* 409 S.W.2d at 367.

The court's analysis relied heavily on a Rhode Island case that involved a claim similar to the one before us. The court in that case was asked to determine whether a claim for "malicious use of process" was a claim for injury to the person within the meaning of the applicable statute of limitations. The Rhode Island Supreme Court concluded that it was,

reasoning that injuries to the person included not only physical injuries resulting from physical trauma, but also "injuries resulting from invasion of rights that inhere in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." *Brown v. Dunstan,* 409 S.W.2d at 367 (quoting *Commerce Oil Refining Corp. v. Miller*, 199 A.2d 606, 610 (R.I. 1964)). These rights are distinguished from rights that exist by virtue of property ownership or contract. *Gunter v. Laboratory Corp. of America,* 121 S.W.3d 636, 642 (Tenn. 2003).

The Rhode Island court went on to state that,

> We are of the opinion that an action for malicious use of process is for an injury to the person within the meaning of the pertinent statutory provision. One of the basic personal rights of man as a member of society is the right to be free from any unwarranted application to him of juridical sanction to compel compliance with those norms of conduct established by society for the preservation of social order and security of the state. Such a misuse of legal process acts directly upon the person of the individual even though in some secondary sense it may act also upon a right or privilege extrinsic to the person. A misuse of process need not result inevitably in humiliation or degradation of the individual affected thereby to be held to constitute an injury to the person, it being the nature of the right invaded and not the elements of damage resulting therefrom that determines its character as an injury to the person.

*Commerce Oil Refining Corp. v. Miller*, 199 A.2d at 610.

Our courts have had a number of opportunities to apply the logic of *Brown v. Dunstan* and *Commerce Oil Refining Corp v. Miller* to other claims for invasion of rights. In *Sudberry v. Royal & Sun Alliance,* M2005-00280-COA-R3-CV, 2006 WL 2091386 (Tenn. Ct. App. July 27, 2006) (Rule 11 Permission to Appeal Denied Nov. 20, 2006), for example, this court ruled that a suit for retaliatory discharge was governed by the one year statute of limitations for personal injury.

The plaintiff in that case did not have an employment contract, and thus was an employee-at-will under Tennessee law. We reasoned that to the extent that his claim was a valid one, therefore, whatever right to employment he had was one that he enjoyed simply by virtue of being a person in the eyes of the law. We noted that, conversely, if the plaintiff had been working under a contract for continued employment or for employment for a definite term that had not yet expired, then his termination would have been an injury to property, because it would have arisen by virtue of his loss of a contract right, which is a

form of property. *See also*, *Montague v. City of Johnson City,* 03A 01-9402-CV-00049, 1994 WL 287587 (Tenn. Ct. App. June 30, 1994) (Rule 11 perm. app. denied Oct. 3, 1994) (holding that despite the alleged loss of his property, the gravamen of a prisoner's claim was violation of his constitutional rights, an invasion of his rights as a person, and thus that Tenn. Code Ann. § 28-3-104(a)'s one year statute of limitations applied).

The wrongful use of legal or judicial process is similarly an invasion of a personal right - the right to be free from abusive use of the judicial process. Our conclusion is bolstered by the fact that Tenn. Code Ann. § 28-3-104 also specifies several other types of claims that do not involve physical injury, but do involve misuse or abuse of the legal system: malicious prosecution, wrongful imprisonment, and attorney malpractice. Although those claims are distinct in the eyes of the law from claims for abuse of process, they more closely resemble an abuse of process claim than do claims for injury to real or personal property.[4] We therefore find that abuse of process falls squarely within the ambit of Tenn. Code Ann. § 28-3-104, and that the trial court correctly found that it is subject to the one-year statute of limitations.

## VI. ACCRUAL OF CAUSE OF ACTION FOR ABUSE OF PROCESS

As set out above, the incidents that Dr. Blalock recounts as the basis for his claim occurred in 2005 and 2006, and he filed his complaint for abuse of process on January 8, 2009. Thus, those claims are barred by the one year statute of limitations.

However, Dr. Blalock argues that his complaint for abuse of process is timely, even under the one year statute of limitations, because the general rule is that the statute begins to run against a claim of abuse of process "from the termination of the acts which constitute the abuse complained of." 1 AM.JUR.2d, *Abuse of Process,* § 27 (1994). He reasons that it is an abuse of process for Preston to continue to prosecute Landlord's claim for money he has already paid, and that the abuse has not terminated, for it continues so long as Landlord's suit against him remains unresolved. He has not offered any authority that specifically endorses this suggested interpretation of the general rule.

---

[4]It has been observed that malicious prosecution and abuse of process are so closely related that the courts have frequently conflated the two. *See* "Liability for Proceeding with Unfounded Litigation", 33 VANDERBILT LAW REVIEW, 743, 751 (1980). Some states have even erased the distinction between them. *See Mata v. Anderson*, 685 F. Supp. 2d 1223, 1254 (D.N.M. 2010) aff'd, 635 F.3d 1250 (10th Cir. 2011) ("New Mexico has combined the torts of abuse of process and malicious prosecution into a single tort: malicious abuse of process.")

To the contrary, it is generally held that while a cause of action for abuse of process accrues from the termination of the acts complained of, it does not await completion of the case in which the wrongful use of process occurred:

> Unlike an action for malicious prosecution where a legal termination of the prosecution complained of is essential, in an action for abuse of process it is not necessary, ordinarily, to establish that the action in which the process issued has terminated unsuccessfully. For this reason, a cause of action for abuse of process has been generally held to accrue, and the statute of limitations to commence to run, from the termination of the acts which constitute the abuse complained of, and not from the completion of the action which the process issued.

*Hyde Const. Co. v. Koehring Co.*, 321 F. Supp. 1193, 1207 (S.D. Miss. 1969) (citing 1 A.L.R.3d 948, 953). *See, also, Cunningham v. State,* 422 N.E.2d 821, 822 (N.Y. 1981); *Penn v. Iowa State Bd. of Regents,* 577 N.W.2d 393, 400 (Iowa 1998).

Preston contends that it cannot be an abuse of process to file a lawsuit, not even an unmeritorous one, for the merits of a lawsuit cannot be determined until judgment is rendered. He acknowledges that the filing of a lawsuit without a reasonable basis can render the party initiating the suit potentially liable for malicious prosecution, but he points out that, unlike a claim for abuse of process, a claim for malicious prosecution can only be filed after the suit is dismissed or concluded by a judgment against the plaintiff. If that were not so, then the parties and the court would run the risk of inconsistent judgments, with all the complications that implies. We find this reasoning to be persuasive, and we therefore agree that the accrual of a cause of action for abuse of process need not await the termination of an action in the claimant's favor.

### VII. WAS ANY PROCESS ISSUED WITHIN THE RELEVANT PERIOD?

The final question is whether Dr. Blalock has pointed to any conduct by Preston, occurring after January 8, 2008, that meets the requirements of an abuse of process cause of action. As stated above, a claim for abuse of process generally rests on some writ, order, or command of the court in the course of a judicial proceeding and refers to times when the authority of the court is used for some improper purpose.

The only incident cited by Dr. Blalock that occurred within that time period was the deposition of Andrew Hirt, Landlord's financial manager, which was taken on January 15, 2008. Dr. Blalock alleged that Hirt gave false and misleading testimony about the rental status of the office space he had leased in an effort to increase Dr. Blalock's liability for

unpaid rents. He further alleged that Preston knew that Hirt's testimony was false or misleading. If that can be proved, then a variety of potential sanctions would be available against both Preston and Hirt. But under the facts of this case, that conduct in and of itself does not constitute an abuse of process, as it does not involve the authority of the court. We must, therefore, affirm the judgment of the trial court.

## VIII. CONCLUSION

We affirm the judgment of the trial court. Remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, W. Stanford Blalock.

_____
PATRICIA J. COTTRELL, JUDGE